IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONALD VINCENT WILLIAMS,           )
AIS #239426,                       )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     CIVIL ACTION NO. 2:17-CV-366-RAH
                                   )                  (WO)
                                   )
CORIZON HEALTH CARE, *et al.*,[1]  )
                                   )
            Defendants.            )

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

### I.  INTRODUCTION[2]

      This 42 U.S.C. § 1983 action is before the court on a complaint filed by Ronald

Vincent Williams, an indigent state inmate and frequent federal litigant, challenging the

constitutionality of medical treatment he received during a prior term of incarceration at

the Easterling Correctional Facility.  Williams names Corizon, the former contract medical

care provider for the Alabama Department of Corrections, Dr. Jean Darbouze, Nurse Kay

Wilson and Nurse Mona Payne, employees of Corizon assigned to Easterling at the time

---

[1] Corizon Health Care is now known as Corizon, LLC.  For purposes of this Recommendation and in the interest of clarity, the court will simply refer to this defendant as Corizon.

[2] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

relevant to the complaint, and Walter Myers, the warden of Easterling at such time, as defendants.[3]

In the instant complaint, Williams contends correctional health care personnel acted with deliberate indifference in providing medical treatment for blood in his stools.  Doc. 1 at 1–2.  Williams also complains defendant Myers failed to intervene in the treatment provided to him by the prison's medical staff which constituted deliberate indifference to his medical needs.  Doc. 1 at 2.  He seeks appropriate treatment by correctional medical personnel and referral to an off-site specialist for evaluation of his condition.  Doc. 1 at 2.

The defendants filed special reports, supplemental special reports and relevant evidentiary materials in support of their reports, including affidavits and certified copies of pertinent medical records, addressing the claims raised in the complaint.   In these documents, the defendants adamantly deny they acted with deliberate indifference to Williams' medical needs.

After reviewing the initial special report and a supplemental special report filed by the medical defendants, Docs. 19 & 31, the court issued an order on August 8, 2017, directing Williams to file a response to the arguments set forth by the medical defendants in their reports and advising him that his response should be supported by "affidavits, sworn/verified declarations or statements made under penalty of perjury and other [appropriate] evidentiary materials[.]"  Doc. 32 at 2.  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents**

---

[3]Dr. Darbouze served as Easterling's Medical Director, Nurse Wilson acted as the Health Services Administrator whereas Nurse Payne served as the Director of Nursing.

**sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 32 at 3 (emphasis in original).  However, the medical defendants filed a second supplemental special report on August 11, 2017, Doc. 33, based on which the court entered an order advising Williams that he should also address this report when responding to the order entered on August 8, 2017 and granting him an extension of time to file his response to such order.  Doc. 34.  Williams filed sworn responses to each of the reports filed by the medical defendants on August 21, 2017.  Docs. 40 & 41.

Upon receipt of a special report from defendant Myers, Doc. 42, and a third supplemental special report from the medical defendants, Doc. 51, the court entered an additional order allowing Williams an opportunity to file a response to these reports and again advising him of the proper manner in which to respond.  Doc. 52.  On September 18, 2017, prior to entry of the aforementioned order, Williams filed a sworn response to the report of defendant Myers.  Doc. 48.  Williams also filed a verified response to the medical defendants' third supplemental special report on October 2, 2017.  Doc. 56.  The court thereafter issued an order directing defendant Myers to file a supplemental special report and provided Williams the opportunity to respond to this report.  Doc. 73.  Myers filed his supplemental special report on August 26, 2019, Doc. 75, and the court received a sworn response to this report from Williams on September 3, 2019.  Doc. 77.

Pursuant to the directives of the above described orders, the court now treats the special reports and supplements to these reports filed by the medical defendants and defendant Myers as motions for summary judgment.   Upon consideration of the defendants' motions for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the responses filed by Williams, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate

evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S.

521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the

6

material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a

genuine dispute of material fact.  *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525.  Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.  Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the

court finds that Williams has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants on his claims of deliberate indifference.

### III.  DISCUSSION[4]

### A.  Deliberate Indifference to Medical Needs

Williams alleges that the medical defendants acted with deliberate indifference to the presence of blood in his stools.[5]  Williams also argues that the correctional defendant, as warden, should have intervened in the treatment decisions of the health care professionals to ensure that he receive appropriate medical treatment.  As explained below, these assertions entitle Williams to no relief.

**1.  <u>Standard of Review.</u>**  To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Neither medical nor prison personnel may subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams*

---

[4]The court limits its review to the allegations set forth in the complaint.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

[5]Williams, an inmate with no medical training, makes the conclusory allegation that a bleeding colon caused the blood in his stools during the time relevant to the instant complaint.

*v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under well-settled law, neither medical malpractice nor negligence constitutes deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to show "an objectively

serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence.");

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that misdiagnosis of pituitary tumor sounds in negligence and is not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst which "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . .   At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a [claim] of constitutional magnitude for which Section 1983 is reserved.   Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.") (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)).

Additionally, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which

the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989)].  Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate

> indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not
> constitute deliberate indifference). Nor does a simple difference in medical
> opinion between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual
> punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551
> F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted). Moreover, the law is clear that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of inmate-patient). The law is likewise clear that an inmate is not entitled to referral to an outside physician for evaluation. *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant

knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."); *Dixon v. Jones*, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate for physical injuries did not constitute deliberate indifference); *Youmans v. City of New York*, 14 F. Supp. 357, 363–64 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights."); *Schomo v. City of New York*, 2005 WL 756834, at *10 (S.D.N.Y. Apr. 4, 2005) (finding that doctor's decision to deny inmate a second opinion regarding inmate's physical capabilities did not constitute deliberate indifference "since prisoners are not constitutionally entitled to a second medical opinion.").

     **2. Medical Defendants.**  Williams challenges the adequacy of treatment provided to him by medical personnel for blood in his stools while at Easterling during mid-2017. He also asserts that he should have been referred to an outside physician for evaluation and treatment of the blood in his stools which he believes resulted from a bleeding colon.

     The medical defendants adamantly deny they acted with deliberate indifference to Williams' medical needs during the time relevant to this complaint and maintain that Williams had access to health care personnel and received treatment from medical professionals for his complaints during this time.  The medical records before the court demonstrate that medical personnel at Easterling evaluated Williams each time they received a sick call request and he appeared at sick call or a medical appointment with complaints related to blood in his stools, assessed his need for treatment, prescribed

medications to treat his condition, ordered tests/studies to assist in treating Williams and provided treatment to Williams in accordance with their professional judgment.[6]

The medical defendants submitted several affidavits in response to the complaint filed by Williams. After a comprehensive review of the medical records submitted in this case, the court finds that the details of medical treatment provided to Williams as set forth in these affidavits are corroborated by the objective medical records contemporaneously compiled during the treatment process.[7] In his initial affidavit, Dr. Darbouze addresses Williams' claim challenging the medical treatment provided for ongoing complaints of bloody stools which Darbouze notes the inmate attributes "to an alleged bleeding colon." Doc. 19-1 at 3. This affidavit responds to the allegation of deliberate indifference, in relevant part, as follows:

> I have personally seen and evaluated Mr. Williams at the Health Care Unit at Easterling Correctional Facility [each time he was referred to me for treatment].
>
> On September 1, 2016, Mr. Williams had a digital rectal exam (DR[E]). At that time, Mr. Williams was noted to have no hemorrhoids or masses. However, Mr. Williams was noted to have an enlarged prostate. His Hemoccult test was negative. A Hemoccult test is a simple test that checks for the presence of hidden blood in a patient's stool.
>
> I next saw Mr. Williams on November 25, 2016. Mr. Williams claimed to have "severe hemorrhoids" but declined a rectal exam claiming that his hemorrhoids were not out at that time. Mr. Williams was written prescriptions to treat the hemorrhoids.

---

[6]The medical records are devoid of the sick call request for May 5, 2017 referenced by Williams indicating health care personnel never received this request.

[7]Nurse Wilson and Nurse Payne filed affidavits detailing their lack of personal interaction with the treatment provided to Williams and denying any deliberate indifference to his medical needs by them or other medical personnel actually involved with his treatment. Doc. 31 at 3–8.

I next saw Mr. Williams on February 9, 2017.  Mr. Williams claimed to have a trace of blood in his stool after bowel movement on and off.  A Hemoccult study [that] was . . . taken of Mr. Williams [on January 30, 2017] was positive.  His Hemoglobin and blood cell count was 15.8, normal/high.  Mr. Williams was still found to be suffering from hemorrhoids with [a] trace of blood in his stool.

The medications written for Mr. Williams' hemorrhoids [— Colace and a hydrocortisone cream — were prescribed when warranted and] are noted in the medication chart. . . .

[Mr. Williams submitted a sick call request on June 4, 2017 which medical personnel received on June 5, 2017.  Doc. 19-1 at 16.  Nurse Thomas, evaluated Mr. Williams at this time regarding his complaint of blood in his stool.  Doc. 19-1 at 17.]

[A Hemoccult study was ordered for Mr. Williams on June 7, 2017, Doc. 19-1 at 12.]  Mr. Williams refused [to undergo this] study on June 9, 2017.

Mr. Williams' sole complaint at the present time appears to be blood in his stool.  Mr. Williams has a history of hemorrhoids.

An appointment has been made for Mr. Williams to see me in the near future and I will again perform a physical evaluation of Mr. Williams.

Each time Mr. Williams has sought medical care and/or attention for his medical needs he has been seen by me as the Medical Director or the nursing staff at the Easterling Correctional Facility.

. . . .

As the medical records reflect, as well as the medication chart, Mr. Williams has been seen regularly in the health care unit [by various members of the medical staff] for his medical needs. . . .

I am very familiar with the medical needs of Mr. Williams and have treated Mr. Williams for those medical needs [each time he has been referred to me for evaluation].

Doc. 19-1 at 3–4 (paragraph numbering omitted).

Dr. Darbouze filed a supplemental affidavit further addressing Williams' deliberate indifference claim regarding his allegation "that the blood . . . in his stool is the result of a bleeding colon." Doc. 33-1 at 3. This affidavit provides the following information:

> I personally saw and evaluated Mr. Williams on August 1, 2017. Attached hereto are my medical notes from my personal evaluation of Mr. Williams. My notes state as follows:
>
> WT 196, H5-8, O298 &, P84, R18, BP 128/78 per MD
> S. 55 year old male – claims to be passing large amount of blood with his BM. Requesting for a colonoscopy or evaluation by outside MD for second opinion. He claims that his late father died from an unknown cancer – mother had one breast removed.
>
> O – Refuses DRE (digital rectal examination) as advised – just wants evaluation by outside MD for second opinion.
>
> Rectal bleeding not confirmed by lab test – patient declines DRE – indicated [to him that this is] an initial exam for rectal bleeding.
>
> Previous lab tests taken of Mr. Williams were all normal and did not reveal any indications of rectal bleeding [indicative of a bleeding colon] or loss of blood.
>
> Mr. Williams has had a history of hemorrhoids. However, there is no indication of any loss of blood from the rectum nor is there any problem[] indicated through his lab work.
>
> Mr. Williams was advised to have a digital rectal examination [on August 1, 2017] and this was refused by the patient, Mr. Williams.
>
> Mr. Williams is regularly seen and evaluated in the health care unit at the Easterling Correctional Facility.
>
> Mr. Williams does not appear at this juncture to be in any need of further medical treatment, although Mr. Williams will be followed at the health care unit at the Easterling Correctional Facility for his medical needs.

Doc. 33-1 at 3–4 (paragraph numbering omitted). Finally, in a subsequent affidavit, Dr. Darbouze avers that as of the date of such affidavit, September 8, 2017, in his medical

opinion "[t]here is no objective indication that Mr. Williams has blood in his stool or suffers from any medical issues related to his colon."  Doc. 51-1 at 3–4.  It is clear from the affidavits of Dr. Darbouze and the medical records that Dr. Darbouze attributed the traces of blood in Williams' stools to have been caused by his hemorrhoids.  Doc. 19-1 at 4; Doc. 33-1 at 3–4.  In addition, the results of the tests run on Williams and the various physical examinations performed on him did not indicate an internal blood loss such as bleeding from the colon but suggested that the blood in Williams' stools resulted from his hemorrhoids for which he received medication and routine evaluations.  Doc. 19-1 at 4; Doc. 33-1 at 3–4; Doc. 51-1 at 3–4.

Under the circumstances of this case, the court finds that the course of treatment undertaken by the individual medical defendants did not violate Williams' constitutional rights.  Specifically, there is no evidence upon which the court could conclude that these defendants acted in a manner "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted).  Rather, the evidence before the court demonstrates that medical personnel evaluated Williams each time he reported to the health care unit with complaints of bloody stools, prescribed medication to him in accordance with their professional judgment, and ordered tests to aid in their assessment and treatment of his condition.  Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545 (internal citation omitted).  Additionally, the mere

fact Dr. Darbouze did not refer Williams for a second opinion of his diagnosis does not constitute deliberate indifference. *Amarir*, 243 F. App'x at 354; *Dixon*, 2014 WL 6982469 at *9. Williams' conclusory assertions of inadequate medical treatment likewise do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead v, Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Although [Plaintiff] attempts to overcome summary judgment by offering his own sworn statement[s] . . . to support his allegations, the contemporaneous medical records and opinions of the examining medical [professionals] show that this purported evidence" does not rise to the level a constitutional violation.).

Furthermore, insofar as Williams complains Dr. Darbouze should have pursued a mode of treatment other than that prescribed, this allegation likewise does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1575 (holding that inmate's desire for a different mode of medical treatment fails to establish deliberate indifference). Additionally, even if Dr. Darbouze misdiagnosed Williams' condition, such does not rise to the level of deliberate indifference. *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771; *Comstoc*k, 273 F.3d at 703; *Johnson*, 145 F.3d at 168. Thus, to the extent the claims for relief sound in negligence or medical malpractice, neither of these constitutes deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771.

In sum, based on well-settled law cited herein, neither Williams' desire for a different mode of medical treatment, the lack of referral to a specialist for treatment, his

disagreement with the treatment provided to him by the prison's medical personnel nor the alleged misdiagnosis of his condition constitutes deliberate indifference violative of the Constitution.  Moreover, Williams has failed to present any evidence which indicates the individual medical defendants knew that the treatment provided to him created a substantial risk to his health and with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence showing that defendants Darbouze, Wilson or Payne acted with deliberate indifference to Williams' medical needs.

With respect to Corizon, the law is well-established that Williams is not entitled to relief from this entity based solely on the actions of its employees as liability under § 1983 may not be based on Corizon's role as the employer or supervisor of the doctors and nurses who are providing medical treatment to the plaintiff.  *See e.g., Massey*, 646 F. App'x at 780.  For § 1983 liability to attach to a private corporation contracted to provide medical care to inmates, a plaintiff must demonstrate a violation of his constitutional rights and that such violation resulted because of an established policy or custom of that corporation. *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).  Williams does not identify or challenge any policy or custom of Corizon but only challenges the treatment provided by medical personnel employed by Corizon.  Moreover, as set forth herein, Williams has not shown a violation of his constitutional rights regarding the medical treatment provided to him and, in turn, there is no showing of a constitutional violation resulting from a policy enacted by Corizon or otherwise.

For the foregoing reasons, summary judgment is due to be granted in favor of the medical defendants as to Williams' claim of deliberate indifference.

    **3.**  <u>**Correctional Defendant.**</u>  The court's review of the complaint indicates Williams contends Warden Myers should have intervened with the treatment protocol undertaken by the facility's medical personnel.  In response to this allegation, Myers avers that Williams had access to treatment from professional medical personnel while incarcerated and received appropriate treatment from the medical staff throughout his incarceration at Easterling.  Doc. 42-1 at 1; Doc. 75-1 at 1.  Myers also asserts that he has no medical training and, therefore, "relied solely on the judgment of" the prison system's medical professionals regarding the treatment afforded to Williams for trace amounts of blood in his stools.  Doc. 75-1 at 1.

    Initially, a defendant who is not a physician cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor[,]" where the defendant had no knowledge or reason to believe the inmate was not receiving treatment.  *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3rd Cir. 1993); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (holding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like [the warden] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").  Williams requested that Warden Myers intervene in his treatment because he disagreed with the course of treatment undertaken by Dr. Darbouze. It is undisputed that Williams was being seen, evaluated and treated by prison medical personnel.  In addition, there is no evidence before the court that Warden Myers had actual knowledge or any objective reason to know that this treatment was deficient and with this

knowledge disregarded a substantial risk to Williams' health.  While Williams was not satisfied with the treatment prescribed, the record shows that the prison's medical personnel provided treatment to him in accordance with their professional judgment based on their evaluations of the symptoms associated with his condition and various test results. As such, Warden Myers, who is not a physician or health care professional and lacks formal medical training, did not act with deliberate indifference for failing to interfere with the medical treatment provided to Williams.

Insofar as Williams seeks to hold defendant Myers liable for the treatment provided by medical professionals, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed. Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F. Supp.2d 1302, 1307 (M.D. Ala. 2007).

Based on the foregoing analysis, summary judgment is due to be granted in favor of Warden Myers on Williams' claim that this defendant acted with deliberate indifference to his medical needs.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motions for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On or before **June 26, 2020** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of June, 2020.


/s/ Stephen M. Doyle_____
STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE